Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of LEO ALPERT, Respondent, for Compensation
    under the Workmen's Compensation Law, v. J. C. & W. E. POWERS,
    Employer, and THE AMERICAN MUTUAL COMPENSATION INSURANCE
    COMPANY, Insurance Carrier, Appellants.

    *Workmen's Compensation Law — lifting heavy weights — rupture.*

Appeal from an award of the State Industrial Commission, entered in
the office of the Commission August 3, 1917, and a continuation thereof.

Award affirmed. All concurred, except Woodward, J., dissenting with
opinion, in which Sewell, J., concurred.

WOODWARD, J. (dissenting): The claimant, Leo Alpert, in presenting
his demand for compensation, fixes the date of his alleged accident at the
tenth day of April, and the hour of the day at three-thirty P. M. In a
statement in his own handwriting, which he claims was copied from a state-
ment prepared for him by an agent of the insurance carrier, he says that
on the 10th day of April, 1917, " I was doing my usual work on the press
I always work on and about 11 A. M. I began to have cramps in my stomach
but I kept to work until 12 o'clock, then I took a little rest, laying

down in the shop at my lunch hour. I started in again at 12:30 and worked until 3:30 when my cramps were so bad I had to go home and saw a doctor that same evening. He said I had a rupture. On April 10th, the day the cramps came on me I was handling paper of the same size and weight as usual and in the usual way; I did not have anything like an accident happen to me. I did not have any extra strain. I can't account for why the rupture should have come." This statement was made four days after the alleged accident. At a hearing before the Commission on the seventh day of May, less than a month from the date of the alleged accident, the claimant testified entirely in harmony with this statement, making no suggestion of its modification in any way, and the Commission made an award, and included in its findings of fact that the claimant " severely strained himself." On the eighteenth day of June, at the suggestion of the attorney for the insurance carrier, this award was called to the attention of the counsel for the Commission, who advised that there was not sufficient evidence to warrant this finding, or to support the award, and advising that a further hearing be had. Acting upon this advice the Commission held a second hearing on the 2d day of July, 1917, at which time the claimant was further examined, and in response to a question by Commissioner Mitchell he testified directly that he felt no unusual strain at the time of the alleged accident. The Commission then struck out the finding that the claimant " severely strained himself," and directed the formulation of new findings. Subsequently, and on the fourteenth day of July, the counsel to the Commission advised still another hearing, at which all of the parties should be present, and at that time the claimant was further examined, obviously with the purpose of inducing him to modify his previous testimony so as to sustain the award, and he was asked to define his understanding of an accident, and this was followed by interrogatories in reference to the statement from which we have already quoted. The claimant explained that this statement was prepared by a Mr. Brooks, apparently connected with the insurance carrier, and that he read it over and at the request of Mr. Brooks copied it in his own handwriting, adding that " I didn't have any experience in any courts or anything like that." This examination brought out no evidence of any particular importance on the question of the accident. The Commission apparently laid stress upon the fact that the claimant had been examined and accepted into a Hebrew insurance organization about four weeks before the alleged accident, although there was no evidence of anything more than a superficial examination, with no special regard to the question of a hernia, which is the difficulty complained of here. The claimant, on this third effort, did testify that the bundle of papers which he was carrying up to the press was of the weight of seventy or eighty pounds, thus materially increasing the weights which he had previously given, but he further testified that he had been lifting the same kind of bundles in the same way for a period of seven or eight years, and evidently did not intend to modify his previous statements as to the character of the work. He was a pressman, and at intervals he was called upon to place bundles of paper upon the elevated feedboard,

and the Commission, after these various hearings, has found as conclusions of fact that " In the course of his employment it was necessary for Leo Alpert to lift bundles of paper weighing from 40 to 60 pounds from the floor to his shoulder and carry each bundle up two or three steps to lay it on the press. The number of times it was necessary to lift and carry such bundles averaged about twenty per day. On said April 10, 1917, while thus working for his employer at his employer's plant and while engaged in the lifting of a bundle of paper weighing about 70 pounds, he sustained a complete right inguinal hernia which will require an operation," and " (4) The injuries to Leo Alpert were accidental injuries and arose out of and in the course of his employment." It is to be recalled that the claimant has not himself ever testified contrary to his statement that there was no accident, and he is the only witness. No one contradicts him. He fixes in his original claim, and in his testimony, the exact hour of the alleged accident; this is placed at three-thirty P. M. of April tenth, and his testimony at page 31 of the record, to the effect that the bundle of paper which he was carrying when he felt the pain weighed about seventy pounds, relates to a time prior to the noon hour, as will be seen from what follows at page 32. In fact, he tells us all through the record that he had what he supposed were cramps during the forenoon; that he felt the pain when he handled the bundles, and that it receded when he took a rest, and he does not claim that the so-called accident happened until three-thirty in the afternoon, and all that he claims then is that the pain grew more severe as he worked, and that he quit at about that time. There is, therefore, no evidence to support the conclusion of fact that the claimant was carrying a bundle weighing about seventy pounds at the time of this alleged accident; he was carrying a bundle of this size, if at all, when he felt the pain, but he felt the pain at least as early as eleven o'clock in the morning. Where are we to find the evidence to sustain the conclusion of fact that " the injuries to Leo Alpert were accidental injuries? " Where was the accident? When did it occur? The claimant does not say that he had anything which could be characterized as an accident; he specially disclaimed it, and while we are to give a liberal construction to the statute, we are not warranted in calling " a sheep's tail a leg " for the sake of bringing a case within the statute. It may not be improper to recur to the fundamental principles underlying the Workmen's Compensation Law, that we may preserve the integrity of the law. We are to read and understand this act in the light of the environment in which it was created, and it all centers around the proposition that there are certain industrial enterprises which are inherently dangerous to life and limb; that when all of the precautions have been taken, still the employee is subjected to dangers — to accidents — which should be compensated as a part of the cost of production. (See *Ives* v. *South Buffalo R. Co.*, 201 N. Y. 271.) Article 14-a of the Labor Law,* pronounced unconstitutional in that case, provided in its 215th section*

---

* Consol. Laws, chap. 31 (Laws of 1909, chap. 36), art. 14-a, as added by Laws of 1910, chap. 674. Id. § 215, as thus added.— [REP.

that " this article shall apply only to workmen engaged in manual or mechanical labor in the following employments, each of which is hereby determined to be especially dangerous, in which from the nature, conditions or means of prosecution of the work therein, extraordinary risks to the life and limb of workmen engaged therein are inherent, necessary or substantially unavoidable, and as to each of which employments it is deemed necessary to establish a new system of compensation for accidents to workmen." This same idea runs through the present statute; it is because certain employments are inherently dangerous; because accidents are " inherent, necessary or substantially unavoidable," that a special rule has been provided for them, and when the statute refers to an injury or personal injury it means " only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally and unavoidably result therefrom." (Workmen's Compensation Law, § 3, subd. 6.)* And accidental means, not some refinement of reasoning, but such an accident as is inherent, necessarily or substantially unavoidable — that is the class of accidents which the statute was designed to provide for. Of course, if an accident really happens in a plant classed as hazardous by the statute, the fact that it is one which might happen in another plant without incurring liability is not a reason for denying the compensation; the lesser accident is embraced within the general scope of the statute; but in determining what is an accident we have a right to consider what was in the minds of the framers of the law, and this is afforded by the statute as framed by the Commission appointed to prepare it, and those which have followed it. It was those industries which were " determined to be especially dangerous, in which from the nature, conditions or means of prosecution of the work therein, extraordinary risks to the life and limb of workmen " were involved, that the Commission had in mind, and the accidents contemplated were those which involved " extraordinary risks to the life and limb of workmen," and not such as might by a refinement of reasoning come within the definition of accident. The definite injuries which in the very nature of the occupation were bound to occur were what were to be provided for — the accidents which inhered in these specific enterprises. It did not pretend to provide against occupational diseases, nor to provide for the element of depreciation in the man-power involved in productive labor, but for personal injuries, defined to be " only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally and unavoidably result " from such accidental injuries. There must be an accident — one of the inherent accidents of the business — and if disease or infection " naturally and unavoidably " resulted therefrom such disease or infection could be included as a part of the injury, but in the absence of an accident there was no liability for disease or infection; and it seems to be well understood in medical circles that hernia is a disease of slow development, which may manifest suddenly

---

* See Consol. Laws, chap. 67 (Laws of 1914, chap. 41), § 3, subd. 7, as amd. by Laws of 1916, chap. 622.— [Rep.

under ordinary bodily activities.  In other words, the Workmen's Compensation Law does not undertake to go beyond providing compensation for the accidents growing out of occupations which are in and of themselves specially subject to accidents involving "extraordinary risks to the life and limb of workmen engaged therein;" accidents in the ordinary acceptation of that word, the fortuitous and unforeseen bruising and maiming of persons engaged in the enterprises covered by the act.  To say that a man engaged in carrying paper to a press, following out the usual practice of years, neither slipping, straining, falling, bumping, or in any manner realizing that anything has occurred different from his every-day experiences, has been injured in an accident, merely because he felt some pain at various times during the day in his abdominal region, and particularly when he was in the act of lifting one of the ordinary parcels, is an abuse of language.  He might have had the same experiences if he had merely had cramps, as he describes his condition during the day.  This is what he thought he had. It never occurred to him that he had had an accident; he does not now pretend that there was anything in the nature of an accident in the common understanding of that word.  The evidence does not support the conclusion of fact, and the award should be set aside and the claim dismissed. Sewell, J., concurred.